UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

GINA CHOATE,

            Plaintiff,

vs.                                            Case No. 3:09-cv-1253-J-12MCR

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her application for Social Security benefits. The Court has reviewed the record, the briefs, and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

**I.  PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI") on December 29, 2006 alleging she became disabled on February 25, 2005. (Tr. 97-103). The Social Security Administration denied Plaintiff's application initially and on reconsideration. (Tr. 69-74, 78-82). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on September 10, 2008. (Tr. 21-38). On June 1, 2009, the ALJ

---

[1]The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 7).

issued a decision finding Plaintiff was not disabled. (Tr. 10-20). Plaintiff requested review of the ALJ's decision, which the Appeals Council denied, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 1-5). Plaintiff timely filed her Complaint in the U.S. District Court for review of the Commissioner's decision. (Doc. 1).

## II.     NATURE OF DISABILITY CLAIM

### A.     Basis of Claimed Disability

Plaintiff claims that she is disabled due to Hepatitis C, bipolar disorder, and back pain. (Tr. 28-31).

### B.     Summary of Evidence Before the ALJ

Plaintiff was thirty-nine years old at the time of the ALJ's decision. (Tr. 323). She has a high school education, having obtained a GED. (Tr. 25). Plaintiff has past relevant work experience as a housekeeping cleaner, mortgage loan processor, cashier-checker, administrative clerk, and accounting clerk. (Tr. 35-36). Plaintiff's medical history is discussed at length in the ALJ's decision and will be summarized herein.[2]

On June 8, 2005, Plaintiff reported to her primary care physician, Dr. E.P. Secunda, M.D., that she was taking anti-depressants. (Tr. 218). On December 1, 2006, Plaintiff received mental health treatment from Risa S. Doria, A.R.N.P. At that time, Plaintiff was diagnosed with bipolar disorder without psychotic features. Ms. Doria

---

[2]The Court will focus on the medical records pertaining to Plaintiff's mental health as they are primarily at issue here. See (Doc. 12).

determined that Plaintiff's thoughts were lucid, coherent, goal directed and organized. Ms. Doria also noted that Plaintiff's sensorium was clear and she was oriented to person, place, time and situation.  Cognitively, Plaintiff was attentive and had adequate concentration during the interview.  (Tr. 194, 196-97).

On December 15, 2006, Plaintiff reported she had been "feeling better" until she was diagnosed with Hepatitis C, but her medications were helpful.  At that time, Ms. Doria noted no evidence of dyskinesia, psychomotor agitation, or psychomotor retardation.  Ms. Doria further noted that Plaintiff demonstrated no new gross psychopathological manifestations of her mental status.  (Tr. 192).

According to the record, Plaintiff did not seek further mental health counseling until December 4, 2008.  At that time, Plaintiff reported that she did "not really feel better."  However, Ms. Doria's mental status evaluation remained relatively unchanged from her December 15, 2006 examination.  Again, there was no evidence of psychosis or dyskinesia, and no new gross psychopathological manifestation of Plaintiff's mental status.  (Tr. 329).

On February 13, 2007, Dr. Alberto de la Torre, filled out a treating source mental health report.[3]  Dr. de la Torre noted that Plaintiff's concentration was fair and her orientation was intact.  (Tr. 221-22).  Dr. de la Torre opined that because of Plaintiff's "mood liability" and recent diagnosis of Hepatitis C, she could not sustain work activity for an eight hour day, five days a week.  (Tr. 219-22).

---

[3] The record demonstrates that Dr. de la Torre examined Plaintiff on one occasion.  (Tr. 219-22).  Therefore, he is not a treating source.  See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987).

On February 19, 2007, state agency consultant, Dr. Angeles Alvarez-Mullin, M.D., completed a Mental Residual Functional Capacity ("MRFC") Assessment, in which he opined that Plaintiff was moderately limited in the following areas:

> ability to understand and remember detailed instructions, ability to carry out detailed instructions, ability to maintain attention and concentration for extended periods, ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, and ability to set realistic goals or make plans independently of others.

Additionally, Dr. Alvarez-Mullin opined that Plaintiff could follow simple instructions and would be able to maintain a work routine without requiring special supervision. Dr. Sandrik, Psy.D., noted the same limitations and agreed that Plaintiff appeared capable of completing simple, routine tasks and her social interactions were appropriate. (Tr. 223-25, 271).

On December 18, 2008, Plaintiff was seen by consultative examiner, Lynda Walls, Ph.D., who opined that Plaintiff suffered from work limitations due to her mental impairments. (Tr. 311). At that time, Plaintiff's posture and motor behavior was normal, her eye contact was appropriately focused, and her speech and language skills were adequate. Plaintiff understood and recalled basic instructions and her style of responding was deliberate, orderly, and selfcorrecting. Dr. Walls observed that Plaintiff's attention and concentration were within normal limits. (Tr. 310-17).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  29 C.F.R. §§ 404.1520(b), 416.920(a)(2)(I).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. §§ 404.1520(d), 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. §§ 404.1520(e), 416.920(a)(2)(iv).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.  20 C.F.R. §§ 404.1520(f), 416.920(a)(2)(v).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, at step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date.  (Tr. 15).  At step two, the ALJ found Plaintiff had the following severe impairments: hepatitis C and degenerative disc disease.  (Tr. 15).  At step three, the ALJ determined Plaintiff did not have an

impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4.  (Tr. 15-16).  At step four, the ALJ determined Plaintiff retained the residual functional capacity ("RFC")[4] to perform a "less than light work."  Specifically, Plaintiff can never:

> [P]erform tasks which involve a ladder, rope, or scaffolds. Additionally, [Plaintiff] must avoid concentrated exposure to hazards such as machinery and heights.

(Tr. 17-19).[5]

At the September 10, 2008 hearing, the ALJ utilized the testimony of a vocational expert (the "VE").  The ALJ posed hypothetical questions to the VE that included Plaintiff's symptoms and their resulting limitations.  Based on the hypothetical questions posed, the ALJ asked the VE whether a person with Plaintiff's limitations would be able to perform Plaintiff's past relevant employment.  The VE testified the hypothetical individual would be able to perform Plaintiff's past relevant employment.  (Doc. 19-20).  Therefore, the ALJ found Plaintiff was not under a "disability," as defined in the Social Security Act.  (Tr. 20).

---

[4]The residual functional capacity is the most an individual can do despite the combined effect of all of their credible limitations. 20 C.F.R. §§ 404.1545, 416.945. The residual functional capacity is based on all of the relevant evidence in the case record, and is assessed at step four of the sequential evaluation. Id.

[5]The ALJ's RFC determination is for a restricted range of light work.  20 C.F.R. §§ 404.1567(b); 416.927(b).  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." Id.

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

### B.  Issues on Appeal

Plaintiff raises the following three issues on appeal: (1) whether the ALJ's RFC finding and the hypothetical posed to the VE are supported by substantial evidence (Doc. 12, pp. 10-16); (2) whether the ALJ properly discounted the opinions of consultative psychologist, Dr. Walls (Doc. 12, pp. 17-20); and (3) whether the state agency physicians' opinions are consistent with the ALJ's RFC findings (Doc. 12, pp. 21-23).  The Court will address each of these issues.

**1.  Whether the ALJ's RFC finding and the hypothetical posed to the VE are supported by substantial evidence.**

Plaintiff contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to include the limitations caused by Plaintiff's mental impairments.  (Doc. 12, pp. 10-16).  In considering an individual with a mental impairment, the ALJ is required to use the "'special technique' dictated by the [Psychiatric Review Technique Form] for evaluating mental impairments."  Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005) (citing 20 C.F.R. § 404.1520a-(a)).  This technique requires separate evaluations on a four-point scale of how the individual's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation."  Id. (quoting 20 C.F.R. § 404.1520a-(c)(3-4)).  The ALJ is required to complete a PRTF and append it to the decision or incorporate the results of this technique into the findings and conclusions of his decision.  Id. at 1214.  Failure to do so requires remand.  Id.

Plaintiff argues the ALJ failed to apply the limitations noted in the PRTF to Plaintiff's ultimate RFC and the hypothetical posed to the VE.  (Doc. 12, pp. 10-16).  The

Commissioner responds that Social Security Regulation 96-8p dictates that the limitations identified in the PRTF are not an RFC assessment but are used at steps 2 and 3 to determine the severity of the mental impairment and whether it meets the criteria of a listed impairment. (Doc. 14, pp. 11-14).

SSR 96-8p provides:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form ("PRTF") requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the PRTF.

SSR 96-8p. Further, SSR 96-8p requires the RFC to address nonexertional capacities, including mental limitations and restrictions, which must be expressed in terms of work-related functions. SSR 96-8p. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." SSR 96-8p.

Accordingly, the Commissioner is correct that the limitations noted in the PRTF are not an RFC, however, it does not necessarily follow that they should not be included

in the RFC or considered at steps four and five of the sequential analysis.  Instead, the ALJ is required to conduct "a more detailed analysis" of the four categories listed in the PRTF when formulating the RFC and express Plaintiff's nonexertional capacity in terms of work-related function.  Indeed, the Eleventh Circuit recently rejected the Commissioner's argument and held that even though "the PRT and RFC evaluations are undeniably distinct, nothing precludes the ALJ from considering the results of the former in his determination of the latter."  Winschel v. Commissioner of Social Sec., __ F.3d. __, 2011 WL 198372, *__ (11th Cir. Jan. 24, 2011) (internal citations omitted).

In Millhouse v. Astrue, the ALJ found the plaintiff had moderate limitations in concentration, persistence, or pace and in social functioning, but determined these limitations only limited the plaintiff to unskilled work in the RFC.  Millhouse v. Astrue, No. 8:08-CV-378-T-TGW, 2009 WL 763740, at *2 (M.D. Fla. Mar. 23, 2009).  The court reversed and remanded, reasoning:

> Simply finding that the plaintiff had a mental limitation of unskilled work clearly does [not] [sic] constitute 'a more detailed assessment by itemizing various functions contained in the broad categories' of social functioning and concentration, persistence, or pace.  Furthermore, moderate limitations in social functioning and concentration, persistence, or pace constitute greater restrictions than a limitation to unskilled work.  'Unskilled work' is defined as 'work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time.' 20 C.F.R. 416.968(a).  It is not apparent to me that a person with moderate limitation in concentration, persistence, or pace could adequately perform all types of unskilled sedentary work.

Id. at *3-4.

In the instant case, the ALJ concluded that Plaintiff suffered from moderate limitations in social functioning and concentration, persistence, or pace.  However, the ALJ does not reference Plaintiff's mental impairment in his RFC determination.  (Tr. 17-19).  Therefore, following the reasoning in Millhouse, the RFC does not adequately reflect Plaintiff's mental impairment and certainly does not reflect "a more detailed analysis" with specific findings as to the impact of Plaintiff's limitations.

However, as this Court noted in Corbitt v. Astrue, when the ALJ relies on the testimony of a VE, "the key inquiry shifts to the adequacy of the RFC description contained in the hypothetical posed to the VE" rather than the RFC simply cited in the ALJ's decision.  Corbitt v. Astrue, No. 3:07-CV-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (citing Dowell v. Barnhart, No. 06-1023-WEB, 2006 WL 4046164, at *3 (D. Kan. Oct. 31, 2006)).  In the Corbitt case, the ALJ did not include in his RFC the plaintiff's moderate limitations in maintaining concentration, persistence and pace as noted in the PRTF.  Corbitt, 2008 WL 1776574 at *2.  However, the ALJ specifically included the moderate difficulty in maintaining concentration, persistence and pace in the hypothetical to the VE.  Id. at *3.  As such, the Court found no error.  Id.

When the ALJ does not specifically include his PRTF findings in the hypothetical posed to the VE, the Court must analyze the hypothetical to determine if it properly accounts for plaintiff's mental limitations.  In the instant case, in the hypothetical posed to the VE, the ALJ did not explicitly include any limitation regarding Plaintiff's deficiencies in maintaining social functioning and concentration, persistence, or pace, despite the ALJ's finding that Plaintiff suffered from moderate limitations in these areas.

-11-

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002) (citing Jones v. Apfel, 190 F.3d 1224, 1230 (11th Cir. 1999)).  Because the hypothetical posed to the VE in this case did not comprise all of Plaintiff's impairments; specifically, her moderate limitations in social functioning and concentration, persistence, or pace; the ALJ's decision is not supported by substantial evidence and remand is necessary.

### 2. Whether the ALJ properly discounted the opinions of consultative psychologist, Dr. Walls.

Plaintiff argues the ALJ did not properly evaluate and state the weight provided to the opinion evidence offered by mental consultative examiner, Dr. Walls.  (Doc. 12, pp. 17-21).  The weight afforded a medical source's opinion depends upon the medical source's examining and treating relationship with the plaintiff, the evidence the medical source presents to support his opinion, how consistent the opinion is with the record as a whole, the specialty of the medical source, and other factors.  20 C.F.R. §§ 404.1527(d); 416.927(d); SSR 96-2p.

Here, Dr. Walls opined Plaintiff experienced limitations from her mental impairments that would adversely affect her ability to meet the demands of any work activity on an 8 hour a day, 5 day a week basis.  Specifically, Dr. Walls opined that Plaintiff:

- would not be expected to regularly attend a routine and maintain a schedule without more than ordinary supervision due to her lowered ability to use information in a practical manner;

- is significantly depressed;

- appears to be having many difficulties making appropriate decisions other than ones which are very simple well learned ones;

- appears to be having many difficulties learning new tasks; and

- appears to be having difficulties dealing with stress.

(Tr. 313-14). The ALJ discounted these opinions as inconsistent with Dr. Walls' own treatment records as well as the evidence as a whole. (Tr. 18).

With regard to Dr. Walls' own records, Dr. Walls indicated Plaintiff was "appropriately dressed and had good hygiene." (Tr. 311). She also noted that Plaintiff's eye contact was appropriately focused, with adequate speech and language skills. Plaintiff understood and recalled the basics of instructions and her style of responding was deliberate, orderly, and self-correcting. Dr. Walls further observed that Plaintiff's attention and concentration was within normal limits. (Id.).

With regard to the other medical evidence of record, in December 2006, Plaintiff's mental examination performed by Ms. Doria demonstrated that Plaintiff could dress and groom herself adequately, she was cognitively intact, and her thoughts were lucid, coherent, goal directed, and organized. Additionally, Plaintiff's language skills were adequate and her bipolar disorder had improved. (Tr. 192, 196). Plaintiff did not receive further mental health counseling until nearly two years later. (Tr. 329). At that time, Plaintiff's condition remained relatively unchanged as there was no evidence of psychosis or dyskinesia, and no new gross psychopathological manifestations of her mental limitations. (Id.).

In light of the foregoing, the Court finds the ALJ properly discounted Dr. Walls' opinions because they were not by her own records nor the record as a whole.

### 3. Whether the state agency physicians' opinions are consistent with the ALJ's RFC findings.

Plaintiff argues the ALJ erred by failing to state the weight provided to the medical opinions of Drs. Alvarez-Mullin and Sandrik, two non-examining physicians who reviewed the evidence regarding Plaintiff's mental impairments. (Doc. 12, pp. 19-23). Additionally, Plaintiff contends the ALJ's decision is not supported by substantial evidence because of his mistaken description of Dr. Morford's review of Plaintiff's medical records as an "examination." (Doc. 12, pp. 16-17). In response, the Commissioner contends that although the ALJ did not address the opinions of Drs. Alvarez-Mullin and Sandrik, the oversight was harmless. (Doc. 14, pp. 17-22).  The Commissioner further argues that the ALJ's mistaken description of Dr. Morford's review of Plaintiff's medical records was also harmless. (Id.).

 Upon thorough review of the record, the Court finds the opinions of Drs. Alvarez-Mullin and Sandrik regarding Plaintiff's mental condition do not establish that Plaintiff was unable to perform a restricted range of light work. Although Drs. Alvarez-Mullin and Sandrik indicated in the MRFC form that Plaintiff was "moderately limited" in her ability to perform various mental activities, those opinions do not represent an assessment of Plaintiff's RFC. (Tr. 223-24, 271-72). Neither Dr. Alvarez-Mullin nor Dr. Sandrik indicated that Plaintiff had limitations that would prevent her from performing her past relevant work as both doctors concluded Plaintiff is capable of following simple

instructions and can complete simple, routine tasks.[6] (Tr. 35-36, 225, 271). Therefore, the Court finds that the opinions of Drs. Alvarez-Mullin and Sandrik do not conflict with the ALJ's RFC finding or render Plaintiff unable to perform her past relevant work.

Likewise, the Court finds the ALJ's mistaken description of Dr. Morford's review of Plaintiff's medical records as an "examination" was harmless error. The ALJ's disability determination should be reversed simply because the ALJ misidentified Dr. Morford's review of Plaintiff's medical records as an "examination" when neither Dr. Morford's opinions, nor the ALJ's RFC finding regarding Plaintiff's physical limitations, are disputed here. See (Tr. 17, 287-94).

Accordingly, the Court finds the ALJ's failure to address the opinions of Drs. Alvarez-Mullin and Sandrik and mistaken description of Dr. Morford's review of Plaintiff's medical records was, at most, harmless error. See Dyer, 395 F.3d at 1211 (holding that remand to have the ALJ specifically discuss the opinions of the state agency medical and psychological consultants that would serve no practical purpose and would not alter the ALJ's decision, would be a waste of judicial and administrative resources).

## IV.   CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the

---

[6]Plaintiff's past relevant work as a housekeeping cleaner requires a Specific Vocational Preparation ("SVP") of 1 and mental reasoning of 1. Dictionary of Occupational Titles (DOT) § 323.687-014. An SVP of 1 and mental reasoning of 1 connotes unskilled work, which requires little or no judgment to do simple duties that can be learned on the job in a short period of time, and commonsense understanding to carry out simple one or two step instructions. DOT App. C, § III; 20 C.F.R. §§ 404.1568(a), 416.968(a).

Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) re-evaluate Plaintiff's RFC; (2) pose a hypothetical question to the VE that specifically accounts for Plaintiff's mental limitations; and (3) conduct any other proceedings deemed appropriate.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **However, this Order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  25th  day of February, 2011.

*Monte C. Richardson*

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record
Any Unrepresented Party